UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | CRIM. NO. 03-10404-NG |
| | ) | |
| MICHAEL S. GRIFFIN, | ) | |
| RONALD CAVALIERE, | ) | |
| WILLIAM DAVID VENEY, | ) | |
| and RICHARD COLLADO. | ) | |

## MEMORANDUM IN SUPPORT OF MICHAEL S. GRIFFIN'S
## MOTIONS TO DISMISS OR, ALTERNATIVELY, TO SEVER

This Superseding Indictment represents the tail end of a series of prosecutions stemming from the drug distribution activities of one Frank Fister. From in or about 1998 to April 2002, Fister purchased drugs (mostly cocaine, and some marijuana) from sources in Texas, arranged for shipment to Boston, and then sold to others.

Fister's activities unraveled when he was arrested, with Ronald Cavaliere, at Cavaliere's residence on April 17, 2002, upon delivering 300 pounds of marijuana to persons who turned out to be an informant for New Hampshire and Massachusetts police officers. Fister and Cavaliere were indicted on state marijuana charges in Massachusetts and Fister began to cooperate with authorities. A federal investigation ensued in the Eastern District of Virginia, where some of the cocaine had been distributed. In the event, the government prosecuted the major entrepreneurial participants in Fister's activities, all of whom pled guilty and received substantial prison sentences: Fister, Rodney and Ruben Mirabal (Fister's suppliers), as well as Scott Billups and Carlos Carter (Virginia distributors).

This case was originally indicted in the Eastern District of Virginia, but then transferred

here (over the government's objection).   It involves the prosecution of Fister's delivery persons

and helpers, and is founded on the testimony of the kingpin himself and his major suppliers, all

of whom are cooperating in an effort to reduce their sentences (Fister: 292 months; Rodney

Mirabal: 324 months; Ruben Mirabal: 262 months).

The Superseding Indictment contains a single count which alleges that:

> From a date unknown to the Grand Jury, but no later than in on or
> about January, 2000, and continuing until on or about April 17,
> 2002 at Boston, and elsewhere, in the District of Massachusetts,
> and elsewhere,
>
> 1. MICHAEL GRIFFIN,
> 2. RONALD CAVALIERE,
> 3. WILLIAM DAVID VENEY, and
> 4. RICHARD COLLADO,
>
> defendants herein, knowingly and intentionally combined,
> conspired, and agreed with each other, and with persons known
> and unknown to the Grand Jury, to possess with intent to distribute
> and to distribute cocaine, a Schedule II controlled substance, and
> marijuana, a Schedule I controlled substance, in violation of Title
> 21, United States Code, Section 841(a)(1).

The Government's case

The government's evidence is that, originally, during 1998 and 1999, Rodney Mirabal,

who worked for United Airlines, would fly the drugs to Boston himself, but that in 1999[1] and

until April 2002,  Fister turned to these four defendants  to transport his drugs.  The individual

deliveries, as alleged by the government, are listed below. [2]

---

[1] According to Fister, there was one prior trip involving Fister and Cavaliere, in October
1998, in which marijuana was transported from Corpus Christi to Boston.  Upon return, the
marijuana was stored at Cavaliere's house.  50 lbs of it went to Collado.

[2]  The trips made  between January 2000 and the end are shown on charts prepared by the
government, Grand Jury Exhibits 1A, 1B and 1C, attached here as Exhibit A.

| Date[3/] | Participating Defendant | Description |
|---|---|---|
| 9/25/99 | Veney | Cocaine and marijuana, San Antonio to Boston. |
| 10/30/99 | Veney | Cocaine.  Dallas to Boston. |
| 12/11/99 | Veney | Cocaine.  Dallas to Boston. |
| 1/16/00 | Griffin | Cocaine.  Dallas to Boston. |
| 2/12/00 | Griffin | Cocaine.  Texas to Boston. |
| 3/7/00[4/] | Griffin | Cocaine.  Texas to Boston. |
| ?/?/00 | Collado, Cavaliere | Marijuana.  Texas to Boston. |
| 4/4/00[5/] | Veney | Cocaine.  Texas to Boston. |
| 5/20/00 | Griffin | Cocaine.  Dallas to Boston. |
| 6/17/00[6/] | Griffin | Cocaine.  Dallas to Boston. |
| 7/15/00 | Veney | Cocaine.  Dallas to Boston. |
| 9/4/00 | Collado | Cocaine.  To Chicago[7/] |
| 9/16/00 | Griffin | Cocaine.  Dallas to Boston. |
| 9/30/00 | Griffin | Cocaine.  Dallas to Boston. |
| 11/18/00 | Veney | Cocaine.  Dallas to Boston. |
| 1/20/01 | Griffin | Cocaine.  Dallas to Boston. |
| 2/9/01 | Collado | Cocaine.  To Chicago.[8/] |
| 3/10/01 | Griffin | Cocaine.  Dallas to Boston. |
| 5/19/01 | Griffin | Cocaine.  Dallas to Boston. |
| 8/19/01 | Griffin | Cocaine.  Dallas to Boston. |

---

[3/] There are several dates in which there is a discrepancy between the government's chart and the discovery it has supplied.   Since defendant is unaware, at this point, which the government claims to be correct, he simply notes the discrepancies below.

[4/] The government's chart uses March 17 as the date of this trip.  However, the original indictment (Exhibit B) and various items of discovery put the date of the trip as March 7.

[5/] The government's chart uses April 14 as the date for this trip.  Various items of discovery put the date as either April 1 or 4.

[6/] The government's chart uses June 20 as the date for this trip.  Various items of discovery put the date as June 17.

[7/] According to Fister, Collado delivered the cocaine to a customer of Fister in Chicago.

[8/] According to Fister, Collado delivered the cocaine to a customer of Fister in Chicago.

| | | |
|---|---|---|
| 12/8/01 | Griffin | Cocaine. Dallas to Boston. |
| 12/14/01 | Collado | Cocaine. To Chicago.[9] |
| 2/16/02 | Collado | Cocaine. Mirabal delivers to Boston.[10] |
| 3/02[11] | Griffin | Cocaine. San Antonio to Boston |
| 4/02 | Veney, Collado | Cocaine. Houston to Boston.[12] |
| 4/17 | Collado | Cocaine. Transfer in Boston.[13] |
| 4/17 | Cavaliere | Marijuana. Milford, MA.[14] |

It is undisputed that Griffin had no participation in any of the transactions involving the other defendants, nor they in any of his. Defense counsel is aware of no evidence or claim that Griffin had any knowledge that there was any activity involving the other defendants. In short, there will be no evidence that Griffin ever explicitly or even implicitly agreed with any other defendant to commit crimes.

---

[9] According to Fister, Collado delivered the cocaine to a customer of Fister in Chicago.

[10] According to Fister, these drugs were inspected and sorted by himself and Collado.

[11] The government's chart uses March 12. Discovery puts the date as March 2, or as some unspecified date in March.

[12] According to Fister, he now began to deal directly with Mirabal's source and he brought Collado in because Collado spoke Spanish and could be used on trips to Mexico.

[13] Fister says that he had Collado return $1million worth of cocaine to Mirabal, to satisfy a debt.

[14] This transaction was negotiated by Cavaliere. Fister brought the marijuana to Cavaliere's house, where they were both arrested.

<u>Michael Griffin's defense</u>

Michael Griffin made several trips for Fister, but he never knew that he was carrying drugs.  Griffin is the owner and operator of a legitimate moving business, "D2 Piano Movers." He is married, with three children.  He has never been prosecuted or convicted for any other crime.   His company specializes in moving pianos, but it also provides a wide range of other moving services, including interstate and long-distance moves.  His customers include Harvard University, other local universities, music conservatories, instrument companies, and well-known musicians. The company enjoys a considerable reputation for care.  Griffin first met Fister in 1996, when the predecessor moving company, which Griffin co-owned, performed moving services for a realty company with which Fister was affiliated.  On a handful of occasions Griffin drove trucks containing cartons packed by Fister or his associates from Texas to Boston – having been told on each occasion that the cargo was legitimate, but in need of careful handling, such as pottery, china, and crystal. On each occasion, he delivered the cargo to Fister, in the Boston area, never opening the packages.  Defendant denies that these trips were as numerous as alleged, or that he ever knew that he was actually transporting drugs.

<u>The relief sought</u>

When properly analyzed, it is clear that the indictment in this case charges multiple conspiracies: (a) a conspiracy involving Griffin, Fister, and others (not including the three co-defndants) and (b) one or more conspiracies between and among Fister and the three co-defendants, of which Griffin was not a member.  Accordingly, defendant contends:  (1) that the indictment is impermissibly duplicitous and should be dismissed because it charges more than a single crime in a single count, in violation of F.R.Crim.P. 8(a); (2) alternatively, that defendant

should be severed because he is not properly joined with the co-defendants under F.R.Crim.P.

8(b); and (3) that, in any event, joinder of Griffin for trial with his co-defendants would be

extremely prejudicial and he is therefore also entitled to severance under Rule 14.

## ARGUMENT

I.     **Under the Law of Conspiracy, The Conspiracy Charged Against Defendant Griffin Was a Separate And Different Crime From That Charged Against the Co-Defendants.**

In evaluating whether this case involves one or more conspiracies, it is essential to

remember – as the First Circuit has emphasized – that a conspiracy is not a "kind of 'club' that

one joins or a 'business' in which one works." United States v. Glenn, 828 F.2d 855, 857 (1st

Cir. 1987)(Breyer, J.).  Rather, "'the gist of the [conspiracy] offense remains the agreement, and

it is therefore essential to determine what kind of agreement or understanding existed *as to each*

*defendant.*'" Id., (emphasis in original(quoting United States v. Borelli, 336 F.2d 376, 384 (2d

Cir. 1964)(Friendly, J)).   The question, then, is whether this defendant can be said to have

agreed to commit crimes with Cavaliere, Veney, and Collado.

A set of agreements between a central perpetrator – such as Fister – made with multiple

confederates does not necessarily comprise a single conspiracy even if the agreement in each

instance is to do precisely the same thing.  In the classic "wheel" paradigm of collective criminal

activity, where each of several "spokes" conspires to commit a crime with the "hub," there is no

single conspiracy unless there is a "rim," that is, unless each spoke has some awareness of the

other's existence.  This was the holding in Kotteakos v. United States, 328 U.S. 750 (1946).  On

the other hand, it is not necessary for the government to prove that each defendant explicitly

agreed with every other conspirator, or even that a defendant was specifically aware of the other

person's identity.  However, what the government <u>must</u> prove is that the defendant knew that

<u>someone</u> existed to play a role needed for the success of the enterprise.  The critical issue is

whether there is "<u>known interdependence</u>:"

> We also recognize that an agreement or understanding may be tacit.  A defendant drug distributor may *expressly* agree with his immediate supplier that he will sell any drugs provided to him, but he may *tacitly* agree with a more distant supplier, say a smuggler, that each will work for the success of the whole drug operation.  A jury may find a tacit agreement at least when the distributor knows that the smuggler probably exists, that distributing drugs tends to help the smuggler, and that the smuggler's contribution to the success of the entire enterprise is likely needed if the distributor is to achieve his own more immediate objective.  *See United States v. Bruno*, 105 F.2d 921 (2d Cir.), *rev'd on other grounds*, 308 U.S. 287 (1939).  The known interdependence of the linked activities in such a case makes it reasonable to speak of a tacit understanding between the distributor and others upon whose unlawful the distributor knows his own success likely depends. *Cf.  Blumenthal v. United States*, 322 U.S. 539, 558 (1947)(finding that whiskey salesmen conspired with the original, but unknown, owner of the whiskey when they knew themselves to be aiding "a single over-all comprehensive plan").  When such interdependence is missing, when the distributor is indifferent to the purposes of others in the enterprise-say, other distributors – the tacit understanding does not exist.  *See Kotteakos v. United States*, 328 U.S. 750 (1946); [*United States v. Borrelli]*, 336 F.2d 376, 383, n.2.

<u>United States v. Glenn</u>, <u>supra</u> at 857-58 (finding multiple conspiracies).

Thus, in <u>United States v. Portela</u>, 167 F.3d 687, 697 (1st Cir. 1999), the court found that

there was sufficient evidence of a single conspiracy between various individual suppliers to a

middleman even though the individual supplies did not specifically know each other. The critical fact was that the defendant "understood that his transaction's success depended on the health of the trafficking and distribution network focused on [the middleman], which in turn depended on continued transactions between [the middleman] and other suppliers."

But this essential feature of a single conspiracy – known interdependence – is totally absent from this case. There is nothing in the trips made by Griffin – even assuming, on the government's facts, that Griffin knowingly conspired with Fister – to permit the conclusion that he had to know that there were any other trips or transactions. Griffin's transport of drugs for Fister was entirely <u>independent</u> – <u>not interdependent</u> – of the activities of the co-defendants. Indeed, whether Fister had any other shipments from Texas at all would have been a matter of complete "indifferen[ce]," <u>Glenn</u> at 858, to someone in Griffin's position.

In sum, there is no basis in this case to conclude that Michael Griffin ever made any agreement – whether explicit or tacit – with any of the co-defendants in this case. Accordingly, they were simply not members of a single criminal conspiracy and any crimes committed by the co-defendants were different and separate from those allegedly committed by this defendant.

## II.    <u>The Indictment Should Be Dismissed Because It is Duplicitous.</u>

F.R.Crim.P. 8(a) requires that there be "a separate count for each offense." Accordingly, an indictment suffers from the vice of "duplicity," if it contains more than a single offense in a single count. See <u>United States v. Martinez Canas</u>, 595 F.2d 73, 78 (1ˢᵗ Cir. 1979); <u>United States v. Valerio</u>, 48 F.3d 58, 63 (1ˢᵗ Cir. 1995); <u>United States v. Verrecchia</u>, 196 F.3d 294, 297 (1ˢᵗ Cir. 1999). Thus, where an indictment permits the government to prove two separate conspiracies, it is duplicitous and must be dismissed. <u>United States v. Munoz-Franco</u>, 986 F.Supp. 70 (D.P.R.

1997).

  The central allegation of this indictment is that the four co-defendants "agreed with each other, and with persons known and unknown to the Grand Jury." This allegation does not require that <u>each</u> of the defendants conspired with <u>each</u> of the others.  Indeed, the original indictment in this case – which was far more detailed, and charged only Griffin and Cavaliere – made it clear that neither of them were charged with acting with the other.  That indictment charged 16 overt acts committed by Griffin and  Cavaliere, not one of which was alleged to have been participated in by both.  See Exhibit B.[15] In this respect, the case is very similar to <u>Munoz-Franco</u>, <u>supra</u>, at 72, where the indictment was dismissed in light of the fact that there was "not one instance of an overt act where there has been a crossing of lines of a participant from one conspiracy to the other[.]"

### III. The Court Should Sever Defendant Griffin From That of the Co-Defendants Because He Has Been Improperly Joined Under F.R.Crim.P. 8(b).

  Under F.R. Crim. P. 8(b), defendants may be joined in the same indictment only "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."  F.R.Crim.P. 8(b).   An indictment alleging conspiracy, e.g. <u>United States v. Luna</u>, 585 F.2d 1, 4 (1st Cir. 1978), or a pattern of racketeering activity, e.g. <u>United States v. Tashjian</u>, 660 F.2d 829 (1st Cir. 1981), may provide the necessary link if it "embrace[s] all of the acts and transactions upon which the other . . . counts [are] based." <u>Id</u>.  There must, however, be one single overarching conspiracy.  If the charge is really that

---

  [15] Parapraphs 2, 6, 20, and 21, charged acts participated in by Cavaliere but not Griffin. Paragraphs 3,4,5,7,8,9,10,11,12,13,14,and 19 charged acts participated in by Griffin but not Cavaliere.

defendants were charged in separate conspiracies – even if they conspired each time with the same person – the charges are improperly joined, see United States v. Glenn, supra. Generally, in evaluating the definition of the conspiracy for purposes of Rule 8(b), the court accepts the allegations of the indictment, "but only so long as that allegation is made in good faith and upon a factual basis." United States v. Green, 324 F.Supp.2d 311, 318-319 (D.Mass. 2004), additional ruling rev'd on other grounds 434 F.3d 434 (1st Cir. 2005). "Joinder is improper if the government lacks a 'reasonable expectation' of proving the required connection." Id.

The government's theory here is that Frank Fister, the hub of the conspiratorial activity, dealt with defendant Griffin separately from the other three defendants. There is no allegation and there exists no evidence that Griffin ever did anything or agreed to do anything with Cavaliere, Veney, or Collado. There is no allegation – and there is certainly no evidence – that defendant even knew that any of them were involved in any criminal activity with Fister. Under these circumstances, defendant cannot be properly charged with conspiracy with the other three defendants here. Even if it could be said that the indictment actually charged only a single conspiracy linking the four defendants, the government lacks a "reasonable expectation" of proving it. In any event, defense counsel have reviewed all of the minutes of the Virginia and Massachusetts grand juries, as well as the proffers of government witnesses Fister, Rodney Mirabal and Ruben Mirabal, which has been provided by the government. There is no indication anywhere in the discovery that Griffin was told, or made any statement, or in any way had any awareness of Fister's criminal activities with Cavaliere, Veney or Collado. There will be no basis for any conclusion that Griffin either expressly or tacitly entered into a conspiracy with any of them.

**IV.    The Defendant Should be Severed to Protect the Him From Prejudice Under F.R.Crim. P. 14(a).**

A court should grant a severance under Rule 14 if "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).   This defendant's right to a fair trial is jeopardized in precisely this way.  His alleged involvement with Fister was fundamentally different from that alleged against his co-defendants.   The  evidence will be that the other defendants were involved with Fister and with each other as well.  Moreover, according to Fister's statements, Griffin's co-defendants were also more intimately involved in the transactions they did participate in – inspecting, sorting, and dividing up the drugs, delivering to ultimate customers, and in the final instance, actually negotiating the entire transaction.  See pages 2-4, above and accompanying notes.  Defendant Griffin's entire defense depends on the jury's willingness to believe that he unknowingly assisted Fister to transport drugs.  But if the jury is exposed to evidence that all the others knowingly participated in their dealings with Fister, it is very likely that they will leap from that evidence to the conclusion that defendant did so as well.  As this Court has noted, in a case granting a Rule 14 severance of defendants, "[t]here is no question that joint trials, involving defendants with different degrees of culpability, can raise a substantial risk of prejudice [and] that evidence of a codefendant's wrongdoing might erroneously lead the jury to convict the defendant[ ]."  United States v. Green, supra at 319.   That risk is very real and very substantial in this case.

On the other side of the equation, there is very little judicial economy to be gained by joint trial.  See King v. United States, 355 F.2d 700, 704 (1st Cir. 1966)(importance of determining overlap of proof and economy of joinder).  Since the defendant was not involved in the other

defendants' activities and they were not involved in his, there would be little overlap in proof.  In short, there would be little reason to try these defendants jointly other than to create the very prejudicial inferences which defendant should be protected against.

## CONCLUSION

For the reasons set forth above, the Court should allow defendant's motion to dismiss. Alternatively, it should sever defendant from the co-defendants in the Superseding Indictment.

Respectfully submitted,



*/s/ Max D. Stern*
Max D. Stern
BBO No. 479560
Lillian Hirales
BBO No.  652698
Stern, Shapiro, Weissberg
 & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02114-2022

Dated:  December 19, 2005.

G:\SSWG\GRIFFIN, M\Memo supporting dismissal or severance.wpd

-12-