UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES | ) ) ) | |
| v. | ) ) | CRIM. NO. 03-10404-NG |
| MICHAEL S. GRIFFIN, RONALD CAVALIERE, WILLIAM DAVID VENEY, and RICHARD COLLADO. | ) ) ) ) ) ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT
MICHAEL S. GRIFFIN'S MOTION TO SUPPRESS EVIDENCE**

The defendant was arrested on October 28, 2003 on a warrant, at his home at 362 Wolcott Street, in Newton. The arrest was made by TFO ("task force officer") Thomas Kennedy, an Alexandria, Virginia police officer, assisted by a number of Massachusetts state police officers. The plaintiff made certain statements under questioning by Officer Kennedy and the police seized $20,000 in cash, as well as ten Oxycontin or Percocet tablets. Defendant has moved to suppress this evidence.

**STATEMENT OF FACTS**

The facts are set forth in defendant's Affidavit in Support of Motion to Suppress.

On October 28, 2003, at approximately 10:30 a.m., Detective Thomas Kennedy of the Alexandria Police Department and troopers from the Massachusetts State Police arrived at defendant's residence to execute a warrant for his arrest. (The warrant had been issued by the Eastern District of Virginia.) The officers knocked on the door and were led into the house by defendant's son. Defendant, who owned and operated a moving company, had never been arrested or prosecuted for a criminal offense before. He was upstairs at the time, was called

downstairs, and was informed by Detective Kennedy that he was under arrest and that his home, car, and trucks were being seized. He was handcuffed, with his hands behind his back. One of the officers then searched defendant's pockets and found some change, checks, keys, and cash; they also removed his belt and shoelaces.

Defendant was then taken over to the dining room where the officers sat him down on a chair. Defendant was read his <u>Miranda</u> rights, but Detective Kennedy added, "if you cooperate, you get from us what we get from you." Defendant then agreed to answer questions and admitted that he had made trips for Frank Fister. Kennedy asked defendant, inter alia, if he had any money in the house and defendant said, "yes." Detective Kennedy asked, "where is it?" Defendant answered that it was in a safe in the basement. Detective Kennedy then picked up defendant from his chair and forcefully led him down to the basement. Once there, Detective Kennedy asked defendant to show him where the safe was. Defendant was then told by Detective Kennedy to give him the combination to the safe, which he did. Detective Kennedy opened and searched the safe, and seized $15,000 in cash.

Defendant was then taken upstairs into the living room where Detective Kennedy asked him, "where is your driver's license?" Defendant told Detective Kennedy that his driver's license was in his wallet, in his briefcase, which was in one of his trucks. An officer went outside, and returned with the briefcase. Once inside the home, Detective Kennedy and the other officer searched the briefcase. Inside they found $5,000 in the cash and some pills, which Detective Kennedy seized.

The seizure from the briefcase is disputed by Detective Kennedy, who claims in his report that the $5,000 and pills were seized in a second search of defendant's person made after

they came up from the basement.  See TFO Kennedy DEA-6 re. 10/28/03 events (attachment A).

## ARGUMENT

The defendant has moved for suppression of his post-arrest statements and of those items seized at his home without a warrant.  Suppression of the statements is required since Detective Kennedy's advice of rights was misleading and contrary to the requirements of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).   Suppression of the other items of evidence seized is required since those seizures were the product of the illegally obtained statements and, in any event, were seized in violation of the Fourth Amendment.

The government has the burden to establish that the defendant's statements were voluntary and obtained in compliance with <u>Miranda v. Arizona</u>.  See <u>Colorado v. Connolly</u>, 497 U.S. 157, 167 (1986); <u>Lego v. Twomey</u>, 404 U.S. 477, 488-489 (1972).   If the government fails to carry this burden, the court must presume that the statement was involuntary and that the defendant did not waive his rights.  <u>United States v. Jackson</u>, 916 F.2d 236, 241 (1st Cir. 1990).  As there was no search warrant, the government also has the burden of proving that the evidence was seized in compliance with the Fourth Amendment.  <u>United States v. Melendez</u>, 301 F.3d 27 (1st Cir. 2002).

**I.     The Court Should Suppress the Post-Arrest Statements of the Defendant, as Well as the Physical Evidence Seized as a Result of the Interrogation, Since The Statements Were Involuntary and Were Obtained in Violation of the <u>Fifth Amendment and the Requirements of Miranda v. Arizona</u>.**

In order to meets its burden of proving voluntariness, the government must prove that under the totality of circumstances, the defendant's will was not overborne by police coercion – including the pressure caused by express or implied inducements:

> As the Supreme Court indicated almost a century ago, in a case still cited as controlling precedent on the voluntariness of confessions, for a confession to be voluntary it "must not be extracted by any

> sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence . . .", *United States v. Bram,* 168 U.S. 532, 542-43, 18 S.Ct. 183, 186-87, 42 L.Ed. 568 (1897). *See, e.g., Malloy v. Hogan,* 378 U.S. 1, 6-7, 84 S.Ct. 1489, 1492-93, 12 L.Ed.2d 653 (1964); *Miranda,* 384 U.S. at 461-62, 86 S.Ct. at 1620-21; *Brady v. United States,* 397 U.S. 742, 754-55, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970); *Hutto v. Ross,* 429 U.S. 28, 30, 97 S.Ct. 202, 203-04, 50 L.Ed.2d 194 (1976) (all citing to *Bram,* on voluntariness of confession).
>
> . . . . Although *Bram* has not been overruled, it has been modified. The Congress and the courts have indicated that to determine voluntariness it is necessary to look at the totality of the circumstances, *including* any promises or threats made by police officers or the prosecution, in order to see whether the will of the accused was overborne. *See, e.g., Bryant v. Vose,* 785 F.2d at 367-68; 18 U.S.C. § 3501(b) ("The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession ...").

United States v. Jackson, supra at 242. See also United States v. Palmer, 203 F.3d 55, 60 (1st Cir. 2000).

Under Miranda, the government must prove that any waiver of the right to remain was not coerced:

> The inquiry whether a waiver is coerced "has two distinct dimensions." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986):
>
> "First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." *Ibid*. (quoting Fare v. Michael C., 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979)).

Colorodo v. Spring, 497 U.S. 564, 573 (1987); United States v. Rosario-Diaz, 202 F.3d 54, 69 (1st Cir. 2000).

Here, Detective Kennedy read defendant his rights under Miranda, which, of course, included the advice that anything defendant said could be used against him. But Kennedy then added to this advice the statement that "if you cooperate, you get from us what we get from you." This had two effects. First, it forcefully undermined the Miranda-compelled warning of the jeopardy that a statement could be used against him, replacing it with the suggestion that to get favorable or fair treatment he needed to answer their questions. Second, considered in the totality of the circumstances, this proposition put extraordinary pressure on the defendant. This was a man who had never been arrested, or prosecuted, before. He was surprised in his home, placed in handcuffs, restrained in front of his wife and children, and told that his home, car, and moving trucks were all being seized. Then, after a rote recitation of Miranda rights, he was told what, clearly, was what the police really thought: that he needs to cooperate to "get" anything from them. This implied that his silence would be used against him, which was directly contrary to the law. See, e.g., Doyle v. Ohio, 426 U.S. 610 (1976).

Miranda itself held that "any evidence that the accused was threatened, tricked, or cajoled into a waiver will . . . show that the defendant did not voluntarily waive his privilege." 384 U.S. at 476, 86 S.Ct. at 1629. This was not a case in which the police merely failed to give the defendant further advice, after the Miranda warnings. Compare Colorado v. Spring, supra, at 858. Instead, the officer affirmatively provided a further statement which undermined, and in significant respect, contradicted, the earlier advice. Compare also United States v. Byrum, 145 F.3d 405, 408 (1st Cir. 1998) (questioning whether a false assurance to a suspect that he was not in

danger of prosecution would amount to coercion under a due process analysis, but noting that "of course, a false assurance might undercut the gist of a warning, raising questions whether Miranda had been satisfied").

Since, therefore, Griffin's responses to Kennedy's questions were illegally obtained, they must be suppressed.  Likewise, all of the physical evidence must be suppressed since the seizures were a direct product of the interrogations.

**II.     The Court Should Suppress the Evidence Seized From the Safe Since There Was No Voluntary Consent and there Was No Other Justification for the Warrantless Seizure.**

The government, presumably, justifies the search of the defendant's safe and the seizure of its contents on the basis of consent.  There is no conceivable other justification; it was not a search incident to arrest, Chimel v. California, 395 U.S. 752, 763 (1969)(must be of area "within [arrestee's] immediate control") and there were no arguable exigent circumstances.

When the government justifies a warrantless search on the basis of consent, it likewise must prove that, under the totality of the circumstances, the consent was voluntary.  Schneckloth v. Bustamonte, 412 U.S. 218 (1973).  But here there was no consent at all, let alone voluntary consent.  Defendant was in custody – handcuffed – and was forcefully moved to the basement, where Detective Kennedy told him to supply the combination to the safe.  At most, there was a submission to a claim of authority – which does not constitute consent.  Bumper v. North Carolina, 391 U.S. 543, 548 (1968); Schneckloth, supra at 233.  Accordingly, the evidence seized from the safe – in particular, $15000 in cash – must be suppressed.

**III.    The Court Should Suppress the Evidence Seized From Defendant's Briefcase Since The Seizure Was Not Consented to, Nor Incident to Arrest, and there Was No Other Justification for the Warrantless Seizure.**

The government, apparently, justifies the seizure of the $5,000 in cash and the pills on the theory that they were seized as incident to arrest: Detective Kennedy contends – contrary to defendant's account – that the items were taken in a second search of defendant's person after the search of the safe had been conducted. But this is not what happened. In fact, after learning that defendant's wallet was in his briefcase, in his truck, a police officer went out to the truck and brought the briefcase inside, where it was searched. As such, this cannot be justified as incident to arrest. See Chimel, supra. There is no contention that there was consent. And it cannot be justified as an inventory search of an impounded vehicle, see, e.g., Florida v. Wells, 495 U.S. 1 (1990, for the simple reason that the government does not claim to have conducted one.

**CONCLUSION**

For the reasons, set forth above, the evidence should be suppressed.

Respectfully submitted,

/s/ Max D. Stern
Max D. Stern
BBO No. 479560
Lillian Hirales
BBO No.  652698
Stern, Shapiro, Weissberg
 & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02114-2022

Dated:   January 17, 2006.                                                                G:\SSWG\GRIFFIN, M\supress memo.wpd