```
                UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA     )    No. 03-10404-NG
                             )
                             )
                             )
     v.                      )
                             )
1. MICHAEL GRIFFIN,          )
          Defendant.         )
```

**GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO SEVER**

The United States of America, by and through its attorneys Michael J. Sullivan, United States Attorney for the District of Massachusetts, and Rachel E. Hershfang, Assistant U.S. Attorney, hereby opposes the motion to dismiss the indictment, or, in the alternative, for severance, filed by Michael Griffin ("Griffin"). In that motion, Griffin asks the Court to dismiss the indictment on the grounds that it improperly charges more than one conspiracy in the same count. In the alternative, Griffin seeks severance from his codefendants so as to avoid what he claims would be unfair prejudice were all defendants to be tried together.

These motions should be denied. The indictment properly charges a single conspiracy (admittedly, a single conspiracy to traffic in two different drugs, marijuana and cocaine), in which Griffin played a critical role. Severance is inappropriate in light of the law's strong preference that coconspirators be tried

1

together, and in light of the inefficiencies caused by trying the same case repeatedly.

## I.   Factual Overview.

Griffin has been charged with three other men, David Veney ("Veney"), Ronald Cavaliere ("Cavaliere"), and Richard Collado ("Collado"), in a one-count indictment.  The charges stem from a multi-year, two-drug, importation and distribution scheme that was orchestrated, in Massachusetts, by a man named Frank Fister ("Fister").  Fister employed Griffin, Veney, Cavaliere, and Collado as drivers and facilitators for his business.

When Fister's cocaine and marijuana business began, he got the drugs by having a man named Rodney Mirabal ("Mirabal") fly them to Boston.  Mirabal was a United Airlines employee who could fly for free, and was willing to transport cocaine to Fister by air.  See Exhibit 1 (DEA-6), ¶¶24-32.[1]  Over time, Mirabal tired of the travel and Fister arranged to have his cocaine transported over land.  See id. ¶¶32-33.

Veney and Griffin, both of whom were professional transporters (Griffin runs a moving business, D2 Piano Movers, while Veney is a licensed trucker) were responsible for the long-distance hauling of bulk loads of cocaine.  As set forth in more detail in the government's grand jury exhibits, attached as exhibit 2 to Griffin's Memorandum in Support of Motions to

---

[1] For reasons set out in the government's motion to seal, this exhibit has been filed under seal.

Dismiss, or, Alternatively, to Sever ("Def. Mem.") [docket no. 103], Griffin took a total of at least 13 trips to Massachusetts to deliver truckloads of cocaine, beginning in January, 2000 and continuing until March of 2002.  In Texas, where he picked up the cocaine, Griffin met with Mirabal, or with his brother Ruben Mirabal.  <u>See</u> Exhibit 1, ¶¶36-38, 40-41, 43-44, 46-49.  Mirabal or his brother would deliver the cocaine to Griffin, who put it in the trunk of a rental car or in a rented truck.  <u>See</u> Exhibit 2 (Grand jury excerpt) at 28-29; Exhibit 3 (same) at 12-15.[2]  Veney, who was also responsible for delivering truckloads of cocaine, drove at least four such loads over the same approximate time period.[3]  <u>See</u> Exhibit 2 to Def. Mem.  He, too, met either Mirabal or Mirabal's brother to take delivery of the drugs in Texas.  Exhibit 2 at 22-25; Exhibit 3 at 10-12.

    Collado and Cavaliere played different, but equally important, roles.  Each of them was responsible for the dissemination of drugs once they had been transported to Massachusetts by Griffin or Veney.  Cavaliere, who was intimately familiar with the details of Griffin's cocaine trafficking, as his recorded statements evidence, was primarily involved on the marijuana side of the business.  It was Cavaliere who

---

    [2] These exhibits have also been filed under seal for the reasons set out in the government's motion to seal.

    [3] As is set out in Exhibit 1 hereto, ¶¶33-35, Veney transported a number of loads of cocaine before the charged period as well.

3

inadvertently blew the case open when he discussed a drug transaction, in either cocaine or marijuana, with a confidential informant, and then arranged to sell that person 300 pounds of Fister's marijuana. See Exhibit 3 to Def. Mem. (Eastern District of Virginia indictment) ¶20-21. Collado, for his part, assisted by packing that marijuana on the same day. Exhibit 4 hereto (DEA-6), ¶95-97.[4] Collado also played various roles in the cocaine aspects of the drug business, including being available as "muscle" for Fister during meetings with drug suppliers, Exhibit 4 ¶91; being available to translate Spanish for Fister, if necessary, during meetings with drug suppliers, id. ¶¶88, 90-91; counting drug money with Fister, id. ¶79; and returning over 50 kilograms of poor-quality cocaine to Mirabal on Fister's behalf. Id. ¶81-82, 93. Collado also delivered cocaine to a Fister customer in Chicago on two occasions. See Exhibit 2 to Def. Mem.

## II. Argument.

### A. The indictment properly charges a single conspiracy.

Griffin argues that, because he did not know there were "other trips or transactions" and because he transported cocaine "independent of" his co-conspirators, he is not involved in the same conspiracy as them. Def. Mem. 7-8. Because, he says, he "never made any agreement -- whether explicit or tacit -- with

---

[4] This attachment has also been filed under seal.

any of the co-defendants in this case," his crime is separate and he is improperly charged. Def. Mem. 8. Griffin's claim that the indictment is "duplicitous,"[5] on which ground Griffin also seeks dismissal, is the other side of the same coin. Def. Mem. 8-9. In essence, Griffin says that (1) he didn't know these people, didn't work with them, and therefore didn't conspire with them, so he is improperly charged; or (2) he did not knowingly enter into a conspiracy with the codefendants, so the indictment improperly merges his mini-conspiracy with other mini-conspiracies, and he is improperly charged.

Any consideration of the defendant's demand that all of the conspiracy charges in this case be dismissed must begin with the limited basis on which such claims can be granted. "An indictment returned by a legally constituted and unbiased grand jury. . . if valid on its face, is enough to call for trial of the charge on the merits." Costello v. United States, 350 U.S. 359, 363 (1956). Here, no claim is made that the indictment is invalid on its face. Instead, Griffin claims both that he didn't know he was conspiring, and that the conspiracy charges against

---

[5] This word is defined as "given to or marked by deliberate deceptiveness in behavior or speech." American Heritage College Dictionary, 3d ed. (1993 ed.)  It is, no doubt, a losing battle, but the appropriate word for Griffin's claim is likely "duplicative," derived from "duplicate": "2. Existing or growing in two corresponding parts; double." Id. A review of caselaw (including cases quoted in text) shows that any effort to revive this linguistic difference are doomed to failure; still, one need not lightly accept charges of duplicity.

5

him are duplicative (that is, that Count 1 supposedly incorporates more than one federal crime and therefore must be dismissed).

### 1. Griffin is properly charged with his codefendants.

"Whether a single conspiracy or a multiple conspiracy exists is, of course, a question of fact for the jury." United States v. LiCausi, 167 F.3d 36, 45 (citing United States v. Drougas, 748 F.2d 8, 17 (1st Cir. 1984)). "While the nature of the illegal activity, the method of operation, and the scope of conspirator involvement are factors to be considered in determining whether a single conspiracy has been proved, if the totality of the evidence is adequate to demonstrate that all of the alleged coconspirators directed their efforts towards the accomplishment of a common goal or overall plan, then the existence of a single conspiracy can be found." Drougas, 748 F.2d at 17. In assessing whether multiple defendants' criminal conduct constitutes one conspiracy, a court considers whether there was a common "nature, motive, design, implementation, and logistics of the illegal activities as well as the scope of coconspirator involvement." LiCausi, 167 F.3d at 45 (citing United States v. Randazzo, 80 F.3d 623, 629 (1st Cir.1996). The totality of the evidence must "sufficiently demonstrate[] 'that all of the alleged coconspirators directed their efforts towards the accomplishment of a common goal or overall plan.'" LiCausi, 167 F.3d at 45, quoting Drougas, 748 F.2d at 17. To successfully

pursue a conspiracy charge, "[t]he government need not prove that each defendant participated in every transaction necessary to fulfill the aim of the overall agreement, [citation omitted], nor must it prove that each defendant knew every detail of the conspiracy or knew or had contact with every other coconspirator."  LiCausi, 167 F.3d at 45, citing United States v. Mena-Robles, 4 F.3d 1026, 1033 (1st Cir.1993).  Compare United States v. Portela, 167 F.3d 687, 695 (1st Cir. 1999) (in assessing whether a evidence supports finding single conspiracy "courts have looked for (1) a common goal, (2) interdependence among the participants, and (3) overlap among the participants." (citing cases)).

That assessment, here, dictates a finding that Griffin participated in one conspiracy with his charged codefendants and others.  Putting aside, for the moment, Griffin's asserted defense or ignorance, which will be for the jury to consider, the question is whether Griffin knowingly entered into an agreement with one or more others to distribute (or to possess with intent to distribute) controlled substances, knowing that they were controlled substances.[6]  The government contends that

---

[6] Compare First Circuit pattern jury instructions for violations of Title 21, United States Code, §846:
> For you to find [defendant] guilty of conspiracy, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:
>     First, that the agreement specified in the indictment, and not some other agreement or agreements, existed between at least two people to [substantive

7

he did.  He, with Fister, agreed to get cocaine in Texas and bring it to Boston.  He met with the Mirabals to effect the transfer.  He drove quantities of over 100 kilograms of cocaine -- amounts that even a novice would know were destined for distribution, not personal use.  The fact that Griffin did not sit down with Veney, Collado and Cavaliere to discuss their roles, or even know them by name, does not exonerate him of having joined them in an illegal drug-trafficking enterprise.  The goal was common: to bring significant quantities of cocaine and marijuana into Massachusetts and distribute it.  The participants were interdependent: Griffin and Veney brought the drugs to Massachusetts (as did Cavaliere, on occasion) and, once the drugs arrived, Cavaliere, Collado, Fister and others handled them.  Without Griffin and Veney, the others would have been out of a job.  Without Cavaliere, Collado, and Fister, Griffin and Veney would have been out of a job.

Griffin argues that there must be what he calls "known interdependence," cf. Def. Mem. at 7-8 -- a term that he takes to mean that, unless he is conscious of the identities of the other players, he cannot be liable.  This effort stretches the law beyond its breaking point.  If, as the government maintains, Griffin knew what he was doing, he knew equally well that he was

---

crime]; and
    Second, that [defendant] willfully joined in that agreement.

not doing it alone.  Like the defendant in <u>Glenn</u>, the case cited by Griffin, he had a "tacit understanding" with the others who were involved, even if he did not know who they are.  <u>United States v. Glenn</u> 828 F.2d 855 (1st Cir. 1987).

The example given in <u>Glenn</u>, and cited by Griffin, affords a useful parallel: "A jury may find a tacit agreement at least when the distributor knows that the smuggler probably exists, that distributing drugs tends to help the customer, and that the smuggler's contribution to the success of the entire enterprise is likely needed if the distributor is to achieve his own more immediate objective."  <u>Glenn</u>, 828 F.2d 855, 857-58 (1st Cir. 1987).  The "tacit agreement" exists between "the distributor and others upon whose unlawful acts the distributor knows his own success likely depends."  <u>Id.</u> at 858.  So too here: without Griffin, Fister cannot achieve his objectives; without Griffin, Collado has nothing to distribute.  That they may not all know each other personally is of little moment.  Griffin knew that he was transporting truckloads of drugs for Fister.  He knew that the Mirabals were supplying the drugs.  He knew that Fister was not consuming the drugs alone.  He knew that Fister must have had a means for distributing and paying for the drugs, even if he did not know who was involved in the distribution or how the payments were made.  This is enough to support a conspiracy charge.  <u>Compare</u>, <u>e.g.</u>, <u>Portela</u>, 167 F.3d at 696-97 (where drug customer/distributor is not a one-time, on-the-spot purchaser,

but has an "agreement ... to make a sale at a future point," conspiracy is implicated).

### 2. The indictment charges one, and only one, conspiracy.

"Duplicity is the joining in a single count of two or more distinct and separate offenses." United States v. Martinez Canas, 595 F.2d 73, 78 (1st Cir. 1979). "[T]he prohibition against duplicitous indictments arises primarily out of a concern that the jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of any particular offense." United States v. Valerio, 48 F.3d 58, 63 (1st Cir. 1995).

The doctrine of duplicity has little application to conspiracy counts where a single agreement may encompass multiple illegal objectives. As early as Braverman v. United States, 317 U.S. 49 (1942), the Supreme Court made clear that "[t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for the conspiracy is the crime, and that is one, however diverse its objects." Id. at 54, 63. See also United States v. Wood, 57 F.3d 913, 919-20 (10th Cir.1995)(because a defendant "is subject to only one punishment for committing a single conspiracy offense, the fact that the conspiracy alleged an agreement to commit multiplicitous offenses does not render the conspiracy count itself multiplicitous").

Thus, there is no duplicity problem with the indictment in

10

this case and there is surely nothing that requires dismissal. As set forth above, the principal concern with duplicitous indictments is the possibility that the jury will convict "without having reached a unanimous verdict on the commission of any particular offense." Valerio, 48 F.3d at 63. However, "[s]o long as the evidence is sufficient with respect to any of the acts charged, a guilty verdict on an indictment charging several acts in the conjunctive stands." United States v. Hawkes, 753 F.2d 355, 357 (4th Cir. 1985). Hence, any duplicity concern the defendant has with Count 1 of the Indictment (which alleges a conspiracy to distribute controlled substances through two different means, cocaine and marijuana) can be cured by instructing the jury they must agree on a particular object (i.e, a conspiracy to distribute a particular drug) in order to convict. See United States v. Moore, 184 F.3d 790, 793 (8th Cir. 1999) ("Count I charged Moore with committing one offense, conspiracy to distribute a controlled substance, in two ways, with marijuana and methamphetamine. Enumerating the controlled substances did not render count I duplicitous"); United States v. Cherif, 943 F.2d 692, 701 (7th Cir. 1991) ("The problem Cherif complains about -- the possibility that the jury would convict him even though it did not unanimously agree on what false statement he made -- could easily have been cured by an instruction telling the jury that it could convict Cherif on the false statement count only if it unanimously agreed on the

11

false statement he made."). See also United States v. Nelson-Rodriguez, 319 F.3d 12, 31 (1st Cir. 2003) (in rejecting duplicity claim based on conspiracy count alleging planned importations of cocaine, heroin, and marijuana, court noted that "each of these acts was part of a single conspiracy, and the jury instructions made clear that the jury must find as much"); United States v. Clark, 67 F.3d 1154, 1160 (5th Cir. 1995) (a single conspiracy may have as its objective the distribution of two different drugs without rendering it duplicitous). There is no legal flaw in the indictment, and it should stand.

> **B. Severance is inappropriate, inefficient, and wasteful of judicial and government resources.**

Griffin argues that his joinder with the other defendants is improper under Fed. R. Crim P. 8(b). In support of this argument, as noted above, he claims that the government's evidence against him does not sufficiently overlap with evidence against the other named defendants such that there was a single conspiracy, and that the evidence would unfairly prejudice a jury against him. These claims are without merit.

Under Rule 8(b) of the Federal Rules of Criminal Procedure, defendants may be charged in the same indictment if "they are alleged to have participated in . . . the same series of acts or transactions constituting an offense." Each joined defendant need not be charged with each act in the series as long as the offenses are logically related. See United States v. DeLuca, 137

12

F.3d 24, 36 (1st Cir. 1998) (holding that joinder of defendants charged with different counts of extortion was proper because those offenses furthered the "umbrella" conspiracy charge); see also, United States v. Matta-Ballesteros, 71 F.3d 754, 771 (9th Cir. 1995) (no error in joinder when "all of the defendants, including [appellant] were charged with conspiring to commit and committing violent acts in furtherance of drug enterprises having similar memberships and objectives"); United States v. McLain, 823 F.2d 1457, 1467 (11th Cir. 1987) ("litmus test" for proper joinder under Rule 8(b) is whether "common thread" links acts described in indictment to each other or to defendants).  The rational basis for joinder is gathered from the face of the indictment, not the weight of evidence determined from affidavits.  See United States v. Luna, 585 F.2d 1, 4 (1st Cir. 1978) (finding that a conspiracy count sufficiently linked codefendants in indictment even though the jury subsequently acquitted one defendant on the conspiracy count).  Here, the "common thread" is evident from Griffin's motion itself -- Griffin is charged with conspiring with Fister, the Mirabals, and others.  See DeLuca, 137 F.3d at 26, 36 (conspiracy is a "sufficiently connecting link" justifying joinder); see also United States v. Yefsky, 994 F.2d 885, 895 (1st Cir. 1993) (joinder of two conspiracy counts proper where both schemes "use the same basic mechanism," shared participants, and overlapped in time).

Here, as discussed in more detail above, Griffin was the main means by which the cocaine distributed by Fister, Collado, and others made its way to Massachusetts. Although Griffin presumably did not know the details of the business on the Boston end, he brought vast quantities of cocaine to this district. He knew what he was doing. He knew that the cocaine was coming from one source (the Mirabals) and being delivered to another person (Fister), and that others were no doubt involved. The fact that he did not deal directly with his codefendants does not render his joinder with them improper. See United States v. Boylan, 898 F.2d 230, 245 (1st Cir. 1990)) (under Rule 8(b), "the test for initial joinder is what is responsibly alleged"). His argument that he will not be shown to have conspired directly with his codefendants is not germane to the analysis. It is enough that they shared a common goal, the distribution of controlled substances; they need not have known each others' identities, roles, or existence.

### 1. Griffin should be tried with his codefendants.

Coconspirators should be tried together. See Zafiro v. United States, 506 U.S. 534, 537 (1993). Under Fed. R. Crim. P. 14, "the court may grant a severance of defendants" if the joinder, which was proper under Rule 8(a), nonetheless prejudices a defendant. In the First Circuit in particular, the general rule is that "those who are indicted together should be tried

together." United States v. DeLeon, 187 F.3d 60, 63 (1st Cir. 1999) (citation omitted). Severance therefore should be granted only if a defendant can "demonstrate prejudice so pervasive that it would be likely to effect a miscarriage of justice." DeLeon, 187 F.3d at 63 (citations omitted); see also LiCausi, 167 F.3d at 49. To satisfy this standard, a defendant must do more than establish that he might have a better chance of acquittal in a separate trial. Id. (citation omitted). The First Circuit warns defendants seeking severance that this is "a difficult battle for a defendant to win." Id. (citation omitted). As the First Circuit has stated:

> When several defendants are named in a unified indictment, there is a strong presumption that they should be tried together. [citations omitted]. To obtain a severance under such circumstances, a defendant must demonstrate extreme prejudice, such as by showing a 'serious risk that a joint trial would compromise a specific trial right,' or would 'prevent the jury from making a reliable judgment about guilt or innocence.'

United States v. Houlihan, 92 F.3d 1271, 1295 (1st Cir. 1996), quoting Zafiro, 506 U.S. at 538-39; United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir. 1993). In short, it is not common, and should not be easy, for a defendant, particularly a defendant in a conspiracy case, to win severance. E.g., United States v. Brandon, 17 F.3d 409, 440 (1st Cir. 1994) ("In the context of conspiracy, severance will rarely, if ever, be required")

(citation omitted).

Griffin claims that the risk of potential negative "spillover" effect of testimony applicable only against one codefendant, if considered against another codefendant, mandates severance of his claims. In support of this argument, he says that the other defendants "were more intimately involved in the transactions they did participate in -- inspecting, sorting and dividing up the drugs, delivering to ultimate customers, and in the final analysis, actually negotiating the entire transaction." Def. Mem. 11. The implication here, that Griffin is somehow less sullied by his role, is squarely refuted by the Grand Jury exhibits attached to his brief. Veney drove four loads of cocaine. Collado delivered individual kilograms on two occasions, and once returned part of a cocaine shipment that was presumably delivered by Griffin (who drove the five loads of cocaine, totaling 703 kilograms, before the date of the return). Cavaliere delivered a load of marijuana and was arrested. Griffin, driver of 13 loads totaling well over 1000 kilograms of cocaine, is hardly prejudiced by the comparison.

Furthermore, there is always some measure of prejudice to a defendant who is tried jointly with codefendants. See DeLuca, 137 F.3d at 36 ("a measure of evidentiary spillover is a foreseeable concomitant of virtually every joint trial, yet seldom indicates undue prejudice") (citation omitted). However,

such "garden variety prejudice" alone will not suffice in a motion to sever. United States v. Boylan, 898 F.2d 230, 246 (1st Cir. 1990) (citations omitted).

Even were Griffin on the other side of the evidentiary disparity -- that is, with less, rather than more, evidence pointing at him -- it is well recognized that disparity in evidence admissible against different codefendants, alone, is not a sufficient basis for severance. See, e.g., United States v. Levy-Cordero, 67 F.3d 1002, 1007 (1st Cir. 1995)(denial of severance appropriate because no evidence of "spillover" merely because "minnow" stands trial with "kingfish").  Any possible prejudice can be avoided by instructions specifying that jurors are to consider separately the charges against each defendant. E.g., DeLeon, 187 F.3d at 64 (noting, in affirming denial of severance, that limiting instructions had jury consider charges and evidence against defendants individually).

Griffin and his codefendants were properly joined in the indictment and should remain joined for trial.

### 2.  Judicial economy mandates a joint trial.

Judicial economy strongly weighs against severance.  The indictment in this case alleges one conspiracy involving four defendants.  As Griffin's motion anticipates, there is significant overlap in the witness testimony against the four codefendants.  Fister, Mirabal, and Ruben Mirabal are likely to

17

testify in the cases of all four codefendants.  As the Grand Jury exhibits show, the defendants' actions are temporally intertwined with each other.  Separate trials would result in the unnecessary duplication of witnesses and exhibits and cause the government to put on a substantial part of its case twice, thus defeating the clear benefits of a joint trial.  See United States v. Magana, 127 F.3d 1, 7 (1st Cir. 1997) ("There are obvious advantages in judicial economy to the joint trial of defendants accused of the joint commission of crimes.") (citations omitted).  Griffin's unsubstantiated claims of prejudicial spillover do not warrant the expense and inconvenience that would result from trying the same case multiple times.

### 3. Any danger of prejudice can be cured by instruction.

Finally, although there would be no harm in trying Griffin jointly with his codefendants, any <u>potential</u> prejudice arising from a joint trial could be cured by a limiting instruction to the jury that there must be sufficient proof against each individual defendant, and that such proof must be considered independently.  Indeed, such an instruction is fairly mandated in a multi-defendant trial such as this one.  It is well settled that juries are presumed to follow the court's instructions.  See e.g., United States v. Olano, 507 U.S. 725, 741 (1993); United States v. Rullan-Rivera, 60 F.3d 16, 19-20 (1st Cir. 1995); cf.

United States v. Guyon, 27 F.3d 723, 729 (1st Cir. 1994)(limiting instructions "cushion[] the impact and reduce[] any possible prejudice").  Thus, appropriate limiting instructions explaining that each defendant must be considered separately will eliminate any perceived prejudice.

## CONCLUSION

Based on the facts and argument set forth above and filed herewith, as well as any presented at a hearing on this matter, the government submits that Griffin's motions should be denied.

                                Respectfully submitted,

                                MICHAEL J. SULLIVAN
                                United States Attorney

                By:
                      /s/ Rachel E. Hershfang
                      RACHEL E. HERSHFANG
                      Assistant U.S. Attorney

Dated: February 23, 2006

## CERTIFICATE OF SERVICE

This is to certify that I have this day served upon counsel of record the foregoing by filing it electronically this 23rd day of February, 2006.

                      /s/ Rachel E. Hershfang
                      RACHEL E. HERSHFANG
                      ASSISTANT UNITED STATES ATTORNEY