```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA      )    No. 03-10404-NG
                              )
                              )
                              )
     v.                       )
                              )
1. MICHAEL GRIFFIN,           )
        Defendant.            )
```

## GOVERNMENT'S OPPOSITION TO MOTION TO SUPPRESS STATEMENTS AND EVIDENCE

The United States of America, by and through its attorneys Michael J. Sullivan, United States Attorney for the District of Massachusetts, and Rachel E. Hershfang, Assistant U.S. Attorney, hereby opposes the motion to suppress filed by Michael Griffin ("Griffin"). In that motion, Griffin asks the Court to suppress statements he made to the police officers who arrested him, as well as $20,000 in cash and some prescription pills seized from his home.

The government does not intend to offer the prescription pills in its case-in-chief, so there is no need for the Court to address or to rule on the propriety of those seizures.[1]

---

[1] The drugs, approximately five OxyContin tablets and approximately five other oxycodone tablets, were taken from Griffin's home. He admitted that he had been using them to self-medicate for back pain, and that he had no prescription for the drugs. The government believes that the pills are not relevant to the charges in this case, which pertains to the transportation of bulk quantities of cocaine.

**I.   Background.**

Griffin was arrested following an investigation in the Eastern District of Virginia.  That investigation, conducted by a trooper with the Massachusetts State Police ("MSP"), Tim Babbin ("Trooper Babbin") and a Task Force Officer assigned to DEA in eastern Virginia, Tom Kennedy ("Detective Kennedy") revealed a small but productive cocaine-trafficking group operating in Texas, Colorado, Massachusetts, and suburban Washington, D.C.  As more thoroughly described in the opposition to the motion to dismiss and motion to sever, filed herewith, Griffin was one of the transporters for the drugs.  The government's evidence is expected to show that Griffin drove truckloads of cocaine, ranging in quantity from 40 kilograms to almost 150 kilograms, into Massachusetts, over a period of approximately 26 months.

**I.   Relevant Facts.**

In the morning October 28, 2003, Trooper Babbin, Detective Kennedy, and others went to Griffin's house in Newton to arrest him.  [Exhibit 1, DEA-6 entitled, "Arrest of Michael GRIFFIN and Acquisition/seizure of Exhibits N-110 through N-117," ¶2].  A warrant for Griffin's arrest had issued five days before, when he had been indicted in the Eastern District of Virginia.  [Ex. 1 ¶1].

Griffin was home, as was his wife Christina.  [Ex. 1 ¶2]. At the moment that Griffin was arrested, he, his wife, Trooper Babbin and Detective Kennedy were all in the same area.  [Ex. 1

¶2]. Detective Kennedy began advising Griffin of his Miranda rights, reading from a Massachusetts State Police Rights Waiver card. Id. Detective Kennedy is expected to testify that, during that time, Griffin's wife was present and was extremely upset. [Ex. 1, ¶3]. With Trooper Babbin, she left the room. [Ex. 1, ¶3]. Detective Kennedy finished reading Griffin his Miranda rights, pursuant to the card; Griffin said that he understood his rights and agreed to waive them. [Ex. 1, ¶2]. Detective Kennedy is expected to testify that he did not say "if you cooperate, you get from us what we get from you," or words to that effect.

Griffin then described his role in the cocaine conspiracy. He admitted that he had driven drugs for Frank Fister, initially saying he had done so about six times. [Ex. 1, ¶4]. When confronted by Detective Kennedy with the fact that records showed at least twelve trips, however, Griffin conceded that the records were probably right. [Ex. 1, ¶5].

These trips earned Griffin about $560,000, as he agreed. [Ex. 1, ¶5]. When Detective Kennedy asked if Griffin still had money from the trips, Griffin admitted that he had $15,000 in a gun safe in his basement. [Ex. 1 ¶6]. Detective Kennedy is expected to testify that he then advised Griffin that he (Kennedy) would have to get the money from him, or similar words. At that point, Detective Kennedy is expected to say, no more than ten minutes after taking Griffin into custody, the three men (Kennedy, Trooper Mike Smith of the MSP, and Griffin) got up from

the dining room table where they had been talking and walked downstairs to the basement. There, Griffin provided the combination to his safe, and the officers seized $15,000 in cash from an envelope inside. [Ex. 1 ¶6].

Back upstairs, the officers searched Griffin to prepare him for custody. [Ex. 1, ¶7]. During the search, Trooper Smith pulled out of Griffin's pocket a wad of cash; a later inventory showed that it was approximately $5,000. [Ex. 1, ¶7]. (The search also revealed prescription painkiller tablets. Id.)

## ARGUMENT

At the time of his arrest in October, 2003, Griffin admitted that he was involved in a drug conspiracy with Frank Fister. He admitted playing the role of transporter, and he admitted bringing truckloads of cocaine into Massachusetts. He now seeks to suppress those admissions, claiming that Detective Kennedy invalidated the Miranda waiver by appending a sentence to the end of that waiver -- "If you cooperate, you get from us what we get from you." Memorandum in Support of Michael S. Griffin's Motion to Suppress Evidence ("Def. Mem.") 5. Detective Kennedy, a seasoned officer with more than 20 years on the job, did no such thing. And, even had he -- which he did not -- such a statement would not invalidate Griffin's Miranda waiver. The motion should be denied.

As almost an afterthought, Griffin also seeks to suppress the seizures of cash ($15,000 and $5,000, seized from different locations) and drugs. As noted above, the government will not seek to introduce the drugs at trial, so that issue is moot. With respect to the seized cash, however, Griffin gave consent to the search for and seizure of the $15,000 discovered in his gun safe in the basement. The second wad of cash, $5,000, was pulled from his pocket and was thus seized incident to arrest. These efforts must also be rebuffed.

**I.   <u>Griffin knowingly and voluntarily waived his *Miranda* rights</u>.**

There is no merit to Griffin's claim that his statements were not voluntary and therefore were obtained in violation of his due process rights under the Fifth Amendment.[2] In assessing the effectiveness of a waiver, a court looks at the totality of the circumstances surrounding the waiver. <u>See</u> <u>United States v. Palmer</u>, 203 F.3d 55, 60 (1st Cir. 2000), <u>citing</u> <u>Arizona v. Fulminante</u>, 499 U.S. 279, 285 (1991).

In this case, the circumstances strongly indicate the knowing and voluntary nature of Griffin's <u>Miranda</u> waiver. Here, Detective Kennedy will testify that he read Griffin his <u>Miranda</u> waiver from the Massachusetts State Police warning card. [<u>See also</u> Affidavit of Michael S. Griffin in Support of His Motion to Suppress Evidence ("Griffin Aff.") ¶5 (acknowledging that he

---

[2] There is no dispute that Griffin was both in custody and subject to police questioning during the period at issue.

received his <u>Miranda</u> warnings).] At the end of that reading, Griffin said that he understood his rights and chose to speak. [Ex. 1 ¶2; Griffin Aff. ¶5]. Detective Kennedy is expected to deny that he made any statement of the type that Griffin recalls, namely, "if you cooperate, you get from us what we get from you." Def. Mem. 2.

On the state of the evidence as the government believes it to be, there is no basis for suppression. Griffin was given, heard, understood, and waived his <u>Miranda</u> rights. Griffin is an English speaker; he does not claim to have been intoxicated or under the influence of any drug; he does not claim to have suffered a mental or psychiatric disturbance that impaired the voluntary nature of his waiver; nor does he claim that the officers physically intimidated him or were abusive toward him. <u>Cf, e.g.</u>, <u>Brown</u> v. <u>Mississippi</u>, 297 U.S. 278 (1936) (torture); <u>Arizona</u> v. <u>Fulminante</u>, <u>supra</u>, at 1251 (1991) (threats of physical abuse); <u>Garrity</u> v. <u>New Jersey</u>, 385 U.S. 493 (1967) (threat of job loss); <u>United States v. Pellerito</u>, 878 F.2d 1535, 1542 (1st Cir. 1989) (drug use, attempt to withdraw guilty plea); <u>United States v. Celemme</u>, 431 F. Supp. 731, 734 (D. Mass. 1977) (defendant's claim of intoxication). There is no basis to suppress the statements he made.

Even had Detective Kennedy issued the words as Griffin claims, which he did not, there would be no basis to suppress the statements. A statement is voluntary for Fifth Amendment

6

purposes unless it is the product of "coercive police activity." Colorado v. Connelly, 479 U.S. 157, 167 (1986). Whether police activity is coercive is measured by an objective standard; it does not depend on the suspect's mental state. See id. at 164-65 (holding that defendant's mental state can never render statement involuntary absent police overreaching). The government is prepared to prove by at least a preponderance of the evidence that defendant's statements were not a product of police overreaching. See Connelly, 469 U.S. at 167-169 (government must prove voluntariness of statement by preponderance of evidence).

The circumstances of the questioning were not coercive, even in Griffin's version. He received and understood the Miranda warnings. See Griffin Aff. ¶5. He was in a comfortable environment, his own home. Compare, United States v. Burns, 15 F.3d 211, 216 (1st Cir. 1994) (where employee was interviewed in own place of employment, location not coercive). There were two law-enforcement agents with him; neither was in uniform, and neither displayed a weapon. Cf. Griffin Aff., passim. The officers were neither verbally nor physically abusive to him. Id. He is an adult man who understood the situation. He was not under the influence of any substance.

Against all of this, Griffin musters a single sentence and seeks suppression of his confession.

Suppression is not warranted. As an initial matter, it is not at all clear what the alleged statement is supposed to mean.

Griffin claims that it meant that "to get favorable or fair treatment, he needed to answer their questions." Def. Mem. 5. A more plausible explanation is that if Griffin gave something, he might get something; if he gave nothing, he would get nothing -- in other words, that any cooperation could benefit him. Such a statement, had it been made, would not be "coercive," and would not, as Griffin essays, "impl[y] that his silence would be used against him." Def. Mem. 5. Instead, it would imply that cooperation could be viewed favorably. There is nothing in the statement that implies the converse -- that a failure to cooperate would be used against him affirmatively, by being introduced in court. In other words, even had the statement been made, it would not contradict Miranda's essential tenets. Certainly the statement, if made, was neither so clear, nor so threatening, nor so coercive, as to outweigh the myriad other factors that point toward finding Griffin's statements knowing and voluntary. Compare, e.g., United States v. Byram, 145 F.3d 405, 407 (1st Cir. 1998) (officer's false assurance that defendant could testify at another's trial without endangering himself not grounds to suppress statement).

The First Circuit's decision in United States v. Bezanson-Perkins is particularly instructive. 390 F.3d 34 (1st Cir. 2004). In that case, the suspect was given his Miranda warnings, indicated that he wanted to speak, and then began confessing. During the interview, the defendant half-heartedly asked about

getting a lawyer, but continued speaking.  The officers, on many occasions, unambiguously encouraged the defendant to be truthful about his conduct.  On appeal, the defendant argued that the "repeated [police] statements that the truth would help him, served to invalidate his previously knowing, intelligent, and voluntary waiver of his Miranda rights to as to warrant suppression of the confession."  Bezanson-Perkins, 390 F.3d at 39.

The Court of Appeals rejected this argument with little difficulty.  Id. at 42.  There was nothing wrong, the court decided, in what the officers did ("laying out the strong evidence they had, and then asking [the defendant] why, given his understanding of things, he did not take the path that was likely to lead to a lower sentence," id. at 42).

The facts are not foursquare with those alleged by Griffin. In his version of the events, the Miranda warning and the offending sentence were uttered together, rather than at different times.  See Griffin Aff. ¶5.  In Griffin's version, he emphasizes that, at the very time he was to be making a voluntary waiver, Detective Kennedy muddied the waters by throwing in the supposed statement.

This argument should not detain the Court.  In Bezanson-Perkins, unlike in this case, the statements were multiple, and they were explicit.  There is no question but that the defendant in that case understood the police officers to be encouraging him

to talk, in direct contravention of the Miranda warnings.  See, e.g., Bezanson-Perkins, 390 F.3d at 37-38 ("Do you want to help yourself out? That's entirely up to you."; "[...] you can help yourself or attempt to help yourself by whatever you say and you give us to at whatever level.  I can't tell you how much that will help you but there's the bottom line.") He did this while intermittently asking about getting counsel.  Here, to the contrary, even had the disputed statement been made, its meaning was ambiguous, at best.  It was never said again.  Griffin never indicated any discomfort with what he was doing, nor did he ever attempt to stop speaking or ask to see counsel.  His confession was the knowing and voluntary product of his informed consent. It should be admitted at trial.

**II.  The search of the safe was a valid consent search.**

Consent searches are among the most well-recognized exception to the Fourth Amendment warrant requirement.  See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).  In such cases, the government must demonstrate by a preponderance of the evidence that consent to search was obtained voluntarily.  See United States v. Schaefer, 87 F.3d 562, 569 (1st Cir. 1996). Voluntariness can either be express or implied; however, it is not necessary that a suspect know or be specifically advised that he has the right to refuse.  Schneckloth, 412 U.S. at 235-246 (voluntary consent constitutes waiver of Fourth Amendment rights and may be given unintentionally and without knowledge of right

10

to refuse). See also United States v. Forbes, 181 F.3d 1, 5-6 (1st Cir. 1999)(consent voluntary despite absence of advice regarding right to refuse).

In this case, Griffin does not deny that he gave consent. Instead, he says that he "was in custody -- handcuffed -- and was forcefully moved to the basement" for the search. Def. Mem. 6. The government disputes that there was any undue force or physical coercion on the basement trip, but of course concedes that Griffin was in custody. This is not enough to vitiate consent, however. In evaluating the voluntariness of Griffin's consent, that is but one factor that the Court will assess; others are the "age, education, experience, intelligence, and knowledge of the right to withhold consent [. . .] whether the consenting party was advised of his or her constitutional rights and whether permission to search was obtained by coercive means or under inherently coercive circumstances." United States v. Barnett, 989 F.2d 546, 555 (1st Cir. 1993), cert. denied, 510 U.S. 850; see also, United States v. Collazo-Aponte, 216 F.3d 163, 187 (1st Cir. 2000), cert. granted in part, judgment vacated in part on other grounds (Apprendi violation), 532 U.S. 1036 (2001).

Griffin does not address these factors. Each of them, however, points toward a finding that the consent was voluntary. Griffin is a mature adult; he is well-traveled (as the evidence in this case shows) and educated; he speaks and understands

11

English; he had just been given his <u>Miranda</u> rights, and had agreed to speak. He was in the company of only two law enforcement officers. Although Griffin was not explicitly advised of his right to refuse consent, no such warning is required. <u>See</u> <u>Schneckloth</u>, 412 U.S. at 235-246; <u>Forbes</u>, 181 F.3d at 5-6. And, tellingly, even by his own account, Griffin did not object at any point during the search.

Being in custody, alone, is not enough to render consent invalid. <u>Compare</u> <u>United States v. Navedo-Colon</u>, 996 F.2d 1337, 1338 (1st Cir. 1993) (where defendant had been questioned by an agent for less than an hour, following <u>Miranda</u> warnings, while handcuffed to a chair, "circumstances fall within the bounds of what courts have deemed valid and 'voluntary' consent.") <u>citing</u> <u>United States v. Watson</u>, 423 U.S. 411, 424 (1976) (custody alone does not demonstrate coerced consent to search); <u>United States v. Arango-Correa</u>, 851 F.2d 54, 57-58 (2d Cir.1988) (where <u>Miranda</u> warnings given, normal tone-of-voice questioning by several agents over five hours does not demonstrate coerced consent to search, despite strip search); <u>Shriner v. Wainwright</u>, 715 F.2d 1452, 1455-56 (11th Cir.1983) (where <u>Miranda</u> warnings given, handcuffs and ten hours of detention, including five hours of intensive questioning, does not demonstrate that confession was coerced); <u>Stawicki v. Israel</u>, 778 F.2d 380 (7th Cir.1985) (where <u>Miranda</u> warnings given, 5 ½ hour detention including 1 ½ hour interrogation did not render confession coerced). <u>See also</u>

United States v. Trueber, 238 F.3d 79, 95 (1st Cir. 2001) (error for district court to conclude that any consent on defendant's part was involuntary simply because he was in custody; while "sensitivity to the heightened possibility of coercion is appropriate when a defendant's consent is obtained during custody, custody alone has never been enough in itself to demonstrate ... coerced ...consent to search", quoting United States v. Collazo-Aponte, 216 F.3d 163, 187 (1st Cir. 2000) (internal quotations and citations omitted) (omissions in original)).

Here, in stark contrast to the cases cited by the First Circuit, Griffin had been in custody for no more than ten minutes by the time he led agents to the safe. The questioning had been neither prolonged nor heated. He had received his Miranda warnings. He had not been strip-searched, nor even searched particularly thoroughly (that, as Detective Kennedy will testify, happened later; see Ex. 1, ¶7).

Without more, the fact that Griffin was in custody at the time that he led the officers to his safe does not render his consent coerced. He told them where the safe was, brought them to it, instructed them how to open it, and pointed them to the cash; at no point did he lodge any complaint. Cf. Griffin Aff., passim. The seized $15,000 should be admitted at trial.

**III. The $5,000 was seized incident to Griffin's arrest.**

There is a dispute of fact as to the location of $5,000

13

seized from Griffin.  He claims that it was in a briefcase in a truck outside the house.  Griffin Aff. ¶7.  Detective Kennedy recalls watching as Trooper Smith pulled the cash from Griffin's pocket. [Ex. 1 ¶7].

The court need not resolve the factual dispute, but may instead rule that the currency is admissible in either event. Detective Kennedy's recollection renders a simple answer: the cash was on Griffin, it was seized pursuant to a lawful arrest, it is admissible.  See, e.g., United States v. Infante-Ruiz, 13 F.3d 498, 502 n. 1 (1st Cir.1994).

Under Griffin's theory, the money was in a briefcase.  As explained more thoroughly above, Griffin's directing of the officers to the briefcase was a consent to search, notwithstanding the fact that he was in custody.

The seizure of the $5,000 was proper and the money should be admitted.

**CONCLUSION**

Based on the facts and argument set forth above and filed herewith, as well as any presented at or after a hearing on this matter, the government submits that Griffin's motion should be denied.

                                        Respectfully submitted,

                                        MICHAEL J. SULLIVAN
                                        United States Attorney
                          By:

                                        /s/ Rachel E. Hershfang
                                        RACHEL E. HERSHFANG
                                        Assistant U.S. Attorney

Dated: February 23, 2006

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served upon counsel of record the foregoing by filing it electronically this 23rd day of February, 2006.

                                        /s/ Rachel E. Hershfang
                                        RACHEL E. HERSHFANG
                                        ASSISTANT UNITED STATES ATTORNEY