UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ———————————— | ) | |
| UNITED STATES | ) | |
| | ) | |
| v. | ) | CRIM. NO. 03-10404-NG |
| | ) | |
| MICHAEL S. GRIFFIN, | ) | |
| RONALD CAVALIERE, | ) | |
| WILLIAM DAVID VENEY, | ) | |
| and RICHARD COLLADO. | ) | |
| ———————————— | ) | |

**DEFENDANT MICHAEL GRIFFIN'S OPPOSITION TO GOVERNMENT'S
MOTION IN LIMINE TO ADMIT CO-CONSPIRATORS
DIARIES, LEDGER, AND CALENDAR**

Introduction

The government has filed a motion in limine seeking to admit into evidence Frank

Fister's "diaries" for three years as well as Rodney Mirabal's "ledger" for 2002 and calendar for

2002.  Because the documents in question are not "business records" pursuant to Fed.R.Evid.

803(6) and are not statements of co-conspirators in furtherance of a conspiracy, the

government's motion must be denied.

Facts

Briefly, this is a case in which the government claims that Ruben and Rodney Mirabal

were supplying drugs to Frank Fister, and that Fister was in turn distributing those drugs.  The

government claims that Griffin (and, for that matter, the co-defendants) knowingly delivered the

drugs from Texas to Boston, at the behest of Fister.  There is no evidence defense counsel is

aware of which would show that Griffin and his co-defendants ever worked together or

conspired together.  According to the government, Fister kept in his office Massachusetts

Lawyer's Diaries.  These diaries contain mundane details of Fister's daily life (there are

numerous entries, for example, recording restaurants where Fister ate, as well as his impression

of the food served).  The government contends that Fister also recorded other information,

including:

> . . . dates, amounts, prices, and descriptions of drug shipments;
> dates, amounts, and descriptions of payments to Mirabal and to
> and from Fister; names of drug suppliers and customers; names of
> drug transporters and money transporters; information regarding
> travel and transportation arrangements (e.g. phone numbers,
> addresses and similar information for rental agencies, hotels, and
> airlines); and dates and notes of meetings regarding drug
> trafficking.

The diary entries themselves do not make evident, to say the least, that they contain such

information.  They are, in fact, a collection of cryptic, if not meaningless notes.  The government

has supplied defense counsel with two entries that "reflect drug purchases by your client."  The

first page has a notation reading "Call (1) D-2 balance."  The second page has a notation reading

"3.9 3k - D2."  Defendant would submit that what these two entries reflect is anything Fister

would like the government, and the jury, to believe they reflect.

Mirabal's records are little different.  The pages contain notations that are unintelligible

without explanation, although they clearly have names, numbers, and what might be codes.  It is

not evidence in any way from the face of the records what they concern.

Argument

I.      **The Documents Are Not Business Records Pursuant to Fed.R.Evid. 803(6)**

The documents are not admissible pursuant to Fed.R.Evid. 803(6) because they do not

constitute "business records".  They do not, in fact, demonstrate the indicia of trustworthiness

that Fed.R.Evid. 803(6) is intended to allow.

Fed.R.Evid. 803(6) permits the introduction of documents if  (1) they were made in the course of a regularly conducted business activity; (2) they were kept in the regular course of that business; (3) it was in the regular practice of the business to keep that record; and (4) the record was made by a person with knowledge.  See Fed.R.Evid. 803(6).  The primary goal of Fed.R.Evid. 803(6) is to ensure the "reliability" of records admitted.  See United States v. Cincotta, 689 F.2d 238, 243 (1st Cir. 1982)(noting that decision whether to accept records under Fed.R.Evid. 803(6) and whether the circumstances of their keeping indicates "untrustworthiness" is within discretion of the district court).

### A.    The Law in the First Circuit is Not That Drug Ledgers are Per Se Admissible as Business Records.

The government implies that the law in the First Circuit is that drug ledgers are per se admissible as business records.  This is simply not the case.  The government relies on United States v. Lizotte, 856 F.2d 341, 344 (1st Cir. 1988) for the notion that a calendar showing drug sales is admissible under 803(6).  Lizotte, however, which is the sole instance of the First Circuit treating drug ledgers in this way, is completely distinguishable from the instant case.  In Lizotte, the witness in question had a legitimate business as a wholesaler of fish.  The First Circuit noted that in that legitimate business, he "was accustomed to keeping records; he also kept records of his drug sales."  Id.  The Court noted his method, which was to each evening write on the calendar the amount of cocaine sold that day, and a code to identify the buyer.  The Court found, without further explanation, that this was admissible as a business record.  Id.

Here, of course, there is no evidence that Fister or Mirabal was accustomed to keeping legitimate business records.  Indeed, if the state of their drug records is any indication, they were clearly not so accustomed.  Further, there is no evidence as to their "method" (if any) of keeping

their journals.

Perhaps more importantly, while never expressly overruling it, the First Circuit has not followed Lizotte in its treatment of drug ledgers. In United States v. Alosa, 14 F.3d 693, 696 (1ˢᵗ Cir. 1994) and United States v. Casas, 356 F.3d 104, 125 (1ˢᵗ Cir. 2004), the First Circuit clearly held that if a ledger "manifestly" contains drug records, it is admissible solely as evidence of the existence of a drug conspiracy. Information in the ledger, however, the Court held was inadmissible hearsay. Id.

Indeed, admitting the evidence at issue here as business records would undermine the purpose and rationale behind the rule. As the Advisory Committee explained in adopting the rule, business records are an exception to hearsay because of their reliability, and that reliability is in turn "supplied by the systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relaying upon them, or by a duty to make an accurate record as part of a continuing job or occupation." Fed.R.Evid. 803(6), Notes of Advisory Committee on Proposed Rules.

**B.      The Records Are So Cryptic They May Not Be Admitted Under Rule 803(6).**

There is no question that the records at issue here are so cryptic as to be completely unintelligible. Any person opening any of the records at issue would simply have no means of determining what the record meant. In Petrocelli v. Gallison, 679 F.2d 286, 291 (1ˢᵗ Cir. 1982), the Court held inadmissible under Rule 803(6) records which it found to be "so cryptic that pure guesswork and speculation is required to divine the source of the information." Similarly, here the information should be excluded as unreliable because only "pure guesswork and speculation" are available to divine what information is contained in the records.

**II.    The Records Are Not Admissible as Testimony of a Co-Conspirator**.

The records at issue are not admissible, as the government would have it, as the statement

of a co-conspirator pursuant to Fed.R.Evid. 801(d)(2)(E).  Rule 801(d)(2)(E) provides that "a

statement by a co-conspirator of a party during the course and in furtherance of the conspiracy"

may be admitted.  On order to invoke the rule, however, "a party who wants to introduce a

particular statement must show by a preponderance of the evidence that a conspiracy embracing

both the declarant and the defendant existed, and that the declarant uttered the statement during

and in furtherance of the conspiracy."  United States v. Sepulveda, 15 F.3d 1161, 1180 (1st Cir.

1993).  That evidence must be apart from the statement at issue.  Id. at 1182.  Quite simply, no

such showing has been made here.[1]

The government, relying on United States v. Alosa, 14. F3d at 696-97, asserts the

because the diaries were found in Fister's office (where he also kept large quantities of drugs and

received and made drug deliveries) and Mirabal's records were found in his vehicle parked at his

house (which contained firearms, money-counting machines, and vacuum sealed packets of

currency), the Court may conclude that the government has met its burden.  The situation in

Alosa, however, was very different from the one here - and possibly unique.  In Alosa, it was not

(as the government would have it) that the ledgers were found in a home with a "marijuana

garden in the cellar and drugs and paraphernalia throughout" that was probative, but that the

defendant (against whom the ledgers were intended to be admitted) was found in that same home

with the ledgers. Id. This, along with non-hearsay evidence showing the defendant's handwriting

_____

[1]  The government seems to assert that it may meet its burden, in part, by having Fister
and Mirabal testify that they made the ledgers and used them in furtherance of the conspiracy.
This evidence is simply not extrinsic to the ledgers themselves, however.

in the ledgers, was enough for the district court to find a conspiracy.

Here, of course, Griffin was not living or working in Fister's office, nor in Mirabal's home.  The fact that the records themselves were found in locations were drugs and drug paraphernalia was found means nothing except that the records themselves were probably kept by persons involved with drugs, a proposition without any doubt.  That fact does not, however, tie the records in any way to Griffin (or, for that matter, to any of the defendants).  Thus, there has been no showing made that the statements in the records were made by a co-conspirator in furtherance of the conspiracy, and the records are inadmissible.

<u>Conclusion</u>

Because the ledgers, diaries, and calendar at issue are not admissible as business records and because the statements therein cannot be shown to have been made by a co-conspirator in furtherance of the conspiracy, the government's Motion in Limine must be denied.

Respectfully submitted,

<u>/s/ Kenneth M. Resnik</u>
Max D. Stern
BBO No. 479560
Kenneth M. Resnik
BBO No. 637527
Stern, Shapiro, Weissberg
  & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02114-2022

Dated:  January 25, 2007

<u>Certificate of Service</u>

I hereby certify that this document(s) filed through the EFT system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 25, 2007.